## In re CHILHOWEE R–IV SCHOOL DIST., Debtor.

### Bankruptcy No. 92–42256–2–9.

United States Bankruptcy Court, W.D. Missouri.

Oct. 8, 1992.

C.E. Weedman, Jr., Harrisonville, Mo., for debtor.

Lisa S. Van Amburg, St. Louis, Mo., Creditors Committee.

Steven Block, Kansas City, Mo., for Hettie Standley, Ruthann Burgess, Dora Kiely, Jana Klein and Marilyn Schoppenhorst, Judgment Creditors.

Gary D. Barnes, Kansas City, Mo., for Unsecured Creditors Committee.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

The Chilhowee R–IV School District filed a Chapter 9 Petition for Reorganization. The case was assigned to the undersigned. The major debt of the school district is a substantial judgment in favor of five former teachers together with a judgment for attorney fees and costs entered by the United States District Court for the Western District of Missouri. The total judgment including the attorney fees and costs exceeds $200,000.00. The budget for the school district annually is approximately $650,000.00. Rather than allow the plaintiffs to levy on the assets of the school district, the school district filed this petition in bankruptcy.

■ The immediate subject matter of this opinion is the hearing on the objections to the petition for relief filed by the aforesaid former school teachers. The objection was filed on August 31st and the hearing was held on October 5, 1992. In the objections filed by the creditor school teachers, there were three strings to their bow. First, they alleged the school district is not generally authorized by the state to be a debtor. Second, they alleged that the petition for relief was filed in bad faith and

with unclean hands on the part of the school district. Third, the teachers alleged that the school district is not insolvent. At the beginning of the hearing counsel for the creditor teachers announced they were abandoning Count III of their objections as to the insolvency question. No evidence was presented on that issue. Further, there was no evidence presented by either side on the first issue, to-wit: whether or not the school district was generally authorized by the state to be a debtor. The Court presumes that this Count is also abandoned. All of the evidence and argument was centered on the second count of the objection, to-wit: whether or not the petition was filed by the school district in bad faith and with unclean hands.

The creditor teachers sought to admit seven exhibits. These were identified as Exhibits 2 through 8. The school district objected to Exhibits 2, 3 and 6. The objections were sustained as to Exhibits 2 and 3 but were overruled as to Exhibit 6. Therefore, the creditors were able to get admitted Exhibits 4, 5, 6, 7 and 8. In addition the creditors introduced the testimony of Thomas Weigand. Mr. Weigand is a farmer and is a member of the school board. He was first elected in April of 1989. He is one of six members of the school board of the Chilhowee R–IV School District. The testimony of Mr. Weigand, while interesting, certainly did not provide a proof of background of bad faith on the part of the school district. Although this Court knows nothing of the background of this matter, it would appear that the five school teachers got into a serious controversy with the superintendent of schools at that time. That thereafter the school board apparently backed the superintendent of schools and the teachers found themselves without jobs. It was the school board's position that they had fired the teachers for cause. It was the teachers' position they were improperly fired and the jury apparently believed the teachers.

The only thing the testimony of Mr. Weigand indicated was that the school district had placed itself in the best position for the filing of a Chapter 9 petition for relief. For example, the school district had transferred funds from the incidental fund into the salary fund and into the equipment

fund so that those funds would have more money than originally budgeted. The incidental fund (which would be subject to attack by the former teachers) would not have substantial funds subject to disbursal. Furthermore the testimony did show a slight reduction of apparently six cents in the levy assessed by the school board for the year 1992–1993. The school board's levy had been $4.06 for the 1991–1992 school year and was reduced to $4.00 for the 1992–1993 school year. This made a total reduction in budget of less than $2,500.00 because each penny of levy produces $412.89 theoretically but actually somewhere around $375.00 because not everyone pays their taxes when they are due.

There was some disagreement between the parties as to how much the school board could have levied if it had made a maximum potential levy. The debtor asserts that at this point the school board could have issued a $4.33 or $4.32 levy. If the state authorities determined that the school district was in trouble financially, then apparently the school district could levy a $5.15 levy. The only evidence presented indicated that the school board could take such action only with the concurrence of state officials.

Taking the first figure of $4.33 it would appear to the Court that the maximum amount over regular budget that the school board could have raised for the year would be $12,375.00. On the other hand, taking the $5.15 figure the school board could have raised approximately $43,125.00 in the year 1992–1993.

 As the Court announced at the conclusion of the hearing, the Court would not dismiss the Chapter 9 petition. There are several reasons. First, the mere fact that a debtor, whether it be an individual, corporation, or school board, attempts to place itself in as good a position as it can for entering a bankruptcy situation is only one factor to be considered. The mere fact that prebankruptcy planning has occurred is not indicative of bad faith as such. It is only when the pre-bankruptcy planning leaves the stage of preparation and becomes fraud on the creditors that there is a serious problem and the issue of bad faith rears its ugly head. For a detailed discussion of this see *Is Prefiling Engineering Prudent Planning Or Section 727 Fraud? (Or When Does A Pig Becomes A Hog?)* Koger and Reynolds (Commercial Law League of America Journal, Winter 1988).

Admittedly, the school board does not want to pay the teachers some $200,000.00. Very few judgment debtors want to pay judgment creditors, and the fact that the school board chose to avail itself of a legal remedy afforded it by federal law is not proof of bad faith. The fact even that there might have been some other avenue open to the school board does not brand this choice as being taken in bad faith.

Finally, the school board is already assessing the highest levy in the county. To say that they had to institute the highest possible levy (requiring state approval) before taking any other action or be guilty of bad faith filing, is unrealistic. For these reasons the Court concludes that the movants have not shown bad faith in the filing of the petition for relief by the Chilhowee R–IV School District and the objections to the petition are OVERRULED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.